﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 190429-8344
DATE: July 30, 2019

ORDER

Entitlement to service connection for a lumbosacral strain, resolved, with degenerative disc disease status-post surgery (claimed as lower back pain/injury and residuals) is denied.

Entitlement to service connection for a right foot drop (claimed as foot pain and drop foot limp) is denied.

FINDING OF FACT

The preponderance of the evidence is against finding that the Veteran’s lumbosacral strain began during active service or is otherwise related to in-service treatment for low back pain.

The preponderance of the evidence is against finding that right foot drop is etiologically related to active service, to include as due to an in-service injury or disease.

CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for a lumbosacral strain, resolved, with degenerative disc disease status-post surgery (claimed as lower back pain/injury and residuals) have not been met. 38 U.S.C. §§ 1110, 1112, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2018).

The criteria for establishing entitlement to service connection for a right foot drop (claimed as foot pain and drop foot limp) have not been met. 38 U.S.C. §§ 1110, 1112, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Board notes that the rating decision on appeal was issued in March 2019. In April 2019, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). Specifically, the Veteran submitted a Decision Review Request: Board Appeal (Notice of Disagreement), VA Form 10182, in which he elected Direct Review by a Veterans Law Judge.

The Veteran had honorable active duty service with the United States Marine Corps from October 1961 to February 1966.

As a preliminary matter, the Board observes that a March 2019 rating decision granted service connection for posttraumatic stress disorder evaluated at 50 percent disabling and dermatitis evaluated as non-compensable, effective April 27, 2018. The decision also denied the Veteran’s claims for service connection for a lumbosacral strain, a right foot drop, and several other conditions. In a subsequent rating decision, dated the same month, the assigned evaluation for service-connected dermatitis was increased from non-compensable to 10 percent disabling, effective April 27, 2018.

In a notice of disagreement, dated April 2019, the Veteran disputed the RO’s denial of his claims for service connection for a lumbosacral strain and drop right foot condition only. Accordingly, the Board’s decision will address only the two claims identified above.

Service connection, generally

Service connection may be granted for any current disability that is the result of a disease contracted or an injury sustained while on active duty service. 38 U.S.C. § 1110, 1131 (2014); 38 C.F.R. §§ 3.303 (a), 3.304 (2018).

Entitlement to service connection benefits is established when the following elements are satisfied: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and, (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service (the medical ‘nexus’ requirement). See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); 38 C.F.R. § 3.303 (a) (2018).

Furthermore, in determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107 (West 2014); 38 C.F.R. § 3.102 (2017); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of the matter, the benefit of the doubt will be given to the Veteran. Id.

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record; but does not have to discuss each piece of evidence). Rather, the Board’s analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive; and provide the reasons for its rejection of any material evidence favorable to the claimant). 

Lay evidence, if competent and credible, may serve to establish a nexus in certain circumstances. See Davidson v. Shinseki, 581 F.3d 1313 (2009) (noting that lay evidence is not incompetent merely for lack of contemporaneous medical evidence). When considering whether lay evidence may be competent, the Board must determine, on a case by case basis, whether the Veteran’s particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that “[w]hether lay evidence is competent and sufficient in a particular case is a factual issue.

1. Entitlement to service connection for a lumbosacral strain, resolved, with degenerative disc disease status-post surgery (claimed as lower back pain/injury and residuals)

The Veteran contends that his lumbar spine condition is causally related to active service.

The threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a current diagnosis of a lumbosacral strain, and the record shows treatment for lumbar strains during active service (in 1963, 1965, 1966), the preponderance of the evidence weighs against finding that the Veteran’s current diagnosis of a lumbosacral strain is causally related to active service, to include as due to in-service treatment for lumbar strains.

Service treatment records show that the Veteran was treated for episodic back pain during active service. At enlistment, a physical examination revealed normal findings in October 1961. In November 1963, the Veteran was evaluated for complaints of pain in the lumbar spine area after lifting weights. Pain was endorsed over a 2-week period. According to the Veteran, “hot soaks” were unsuccessful in resolving his pain. A physical examination revealed good range of motion. The Veteran was advised to avoid heavy lifting for 1 week. In December 1965, low back pain was reported over a 2-day period. Prescribed treatment included use of a heat lamp twice per day. Again, in February 1966, the Veteran was treated for low back pain following a slip and fall. An evaluation note referenced recurrent lumbar strains. At separation, no physical abnormalities were noted in February 1966. The Veteran’s previous complaints of back pain were deemed resolved.

Post-service treatment records show chiropractic treatment for low back pain dating back to 2012. In August 2012, the Veteran complained of episodic back pain, which travels down the right leg. Listed diagnoses included lumbar segmental dysfunction, lumbago, and lumbosacral neuritis/radiculitis. 

In July 2013, the Veteran reported dull aching and sharp pain which traveled into the right leg and thigh. Other symptoms included shocking jolts of pain in the low back pain. The evaluation note listed current diagnoses including restless leg syndrome and degeneration of the lumbar spine with intervertebral disc syndrome. 

In October 2015, the Veteran was evaluated for mild persistent right low back pain. Prescribed treatments included oral medication, Hydrocodone and a lumbar spine epidural injection. During the clinical evaluation, he reported worsening pain with prolonged positions and diminishing symptoms when lying in the supine position or to one side. Current diagnoses included segmental and somatic dysfunction of the lumbar region, low back pain, intervertebral disc syndrome, lumbar spine degeneration, and radiculopathy. In February 2017, the Veteran reported right sciatic pain and low back pain ranging in severity from moderate to severe. Pain was described as a 7 on a 10-point scale. Difficulty with prolonging sitting was also noted.

In August 2018, the Veteran was afforded a VA examination. During the clinical evaluation, the examiner noted in-service treatment for a lumbar strain in 1963, 1965, and 1966. At separation, the condition was deemed resolved. Post-service treatment records reveal a diagnosis of lumbar degenerative disc disease, status-post (s/p) surgery in 1976. On examination, the Veteran reported a history of recurrent back pain and related injuries dating back to active service. Thereafter, persistent pain and related treatment was reported. In 1997, the Veteran underwent a second lumbar surgery to treat a prolapsed disc. Radicular symptoms were acknowledged, with worsening symptoms on the right versus the left side. A right foot drop was also observed.

Range of motion testing revealed forward flexion limited to 80 degrees, extension limited to 15 degrees, right lateral flexion limited to 20 degrees, left lateral flexion limited to 15 degrees, and left and right lateral rotation limited to 20 degrees. Range of motion did not contribute to functional loss. Pain was noted on examination, to include with weight-bearing, and it contributed to functional loss. There was no evidence of localized tenderness or pain to palpation, to include with repetitive use testing. Pain limited functional ability over time. No flare-ups or muscle spasms were reported. However, a favorable finding of guarding was observed, but it did not result in abnormal gait or spinal contour. Muscle strength was normal, with no evidence of muscle atrophy or ankylosis. Deep tendon reflects were hypoactive. The Veteran’s sensation was noted as reduced in the right foot. Straight leg raise testing was negative. Mild to moderate radiculopathy impacted the right lower extremity. Moderate involvement of the right sciatic nerve was also noted. Favorable findings of arthritis and intervertebral disc syndrome were indicated, with no evidence of incapacitating episodes. A functional impact was noted as pain with bending and lifting activities.

Following the clinical evaluation, the examiner opined that it was less likely than not that than not (less than 50 percent probability) that the Veteran’s low back condition was incurred in or otherwise causally related to active service. Although in-service treatment for acute lumbar strains was acknowledged, there is no evidence that the episodes resulted in permanent residual conditions or a chronic disability. Therefore, the examiner concluded that the Veteran’s lumbar degenerative disc disease s/p multiple lumbar surgeries, with residual right foot drop, had its onset years after separation and is not otherwise subject to service connection.

In his May 2019 notice of disagreement, the Veteran disputed VA examination findings indicating that the medical evidence failed to show chronicity of symptoms. Specifically, he endorsed an onset of low back pain in-service which persisted during his subsequent employment as a railroad engineer. In 1997, the Veteran underwent a second spinal surgery which improved his pain but resulted in a right drop foot condition.

In multiple lay statements, the Veteran reported chronic low back pain. In September 2018, he acknowledged episodic treatment for low back pain during active service, to include following a slip and fall on ice in February 1966. After separation, the Veteran entered employment with the Railroad. He denied reporting pain at separation but contends that his pain began a few days after discharge. 

In an August 2018 lay statement, the Veteran reported the development of a right drop foot and limp following multiple corrective back surgeries. Other symptoms included severe numbness in the right calf muscle and foot. Upon separation, the Veteran transitioned into employment as a “switchman” for the railroad until 1969, when he was promoted to engineer. He acknowledged a 40-year career with the railroad and noted periodic back pain. The Veteran denied taking any time off due to pain. In 1971 or 1972, he reportedly received treatment from a company physician for a herniated disc. He was later referred an orthopedic surgeon and the Veteran’s initial lumbar surgery was performed in 1976. Post-surgery, he endorsed symptom remission until 1996, when he suffered a ruptured disc with radiating pain down the right leg. Subsequent treatment included a lumbar spine injection and oral prescription medication, Hydrocodone.

On review of the record evidence, the Board finds that the Veteran’s lumbosacral strain is not etiologically related to active service, to include as due to treatment for acute lumbar strains. 

In making all determinations, the Board has fully considered all lay assertions and medical evidence of record. Generally, the Veteran is deemed competent to report on his current symptoms and their onset. However, the record is silent for evidence showing that he possesses the specialized skills and expertise necessary to render complex medical opinions or opine as nature and etiology of his current symptoms. Layno v. Brown, 6 Vet. App. 465, 470 (1994); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377. Further, mere conclusory or generalized lay assertions that an in- service event or illness caused a current disability are insufficient to establish nexus in the absence of competent medical evidence. Waters v. Shinseki, 601 F.3d 1274, 1278. 

In this case, the medical evidence reveals that the Veteran has been diagnosed with multiple lumbar spine conditions to include a lumbosacral strain. Although treatment for acute lumbar strains were noted in service, the conditions were deemed resolved at separation. In fact, no physical abnormalities were observed in February 1966. A report of medical history, bearing the same date, was silent for any reference to recurrent low back pain. No complaints of chronic symptoms were reported within one year of separation or for many years thereafter. Post-service treatment records indicate that the Veteran underwent an initial lumbar surgery in 1976, a decade after discharge. A subsequent surgery was performed 20 years later, in 1996, with a remission of symptoms noted between the surgical procedures. 

The Veteran’s post-service employment history included 40 years of service with the railway system. Therein, he acknowledged several years of service as a “switchman” and was eventually promoted to an engineer. Each role required significant bending and lifting, along with prolonged sitting, walking, and standing. 

Although the Board recognizes that the Veteran was treated for acute lumbar strains during active service, by his own lay admission, he next received treatment for back pain in 1971 or 1972; 5 or 6 years after separation. On examination in August 2018, the VA examiner acknowledged a causal linkage between the Veteran’s back surgeries and a residual condition, a right drop foot, however, no “nexus” was established between in-service treatment for episodic back pain and subsequent symptoms with related treatment years later. 

Moreover, the Board notes that the medical evidence suggests a more probable causal linkage between the Veteran’s current low back condition and his lengthy employment history as a railroad engineer; rather that remote in-service treatment for acute lumbar strains decades earlier. 

While the Board recognizes the Veteran’s subjective belief that his current lumbar spine condition is causally related to active service, the medical evidence does not support his contention. In this case, the Board accords more probative weight to the VA examiner’s opinion as it reflects a review of the Veteran’s full medical history and the conclusions reached were reasonably drawn from the record. 

Accordingly, as the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107 (b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for a lumbosacral strain must be denied.

2. Entitlement to service connection for a right foot drop (claimed as foot pain and drop foot limp)

The Veteran contends that his right foot drop is causally related to active service. He further contends that his symptoms are causally related to his current diagnosis of lumbosacral strain, to include in-service treatment for acute low back strains. As discussed more fully below, the preponderance of the evidence is against his claim.

The threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has a current diagnosis of a right drop foot, and the record shows treatment for foot numbness and complaints of low back pain during active service (in 1963, 1965, 1966), the preponderance of the evidence weighs against finding that the Veteran’s right foot drop is causally related to active service.

Service treatment records are largely silent for complaints of foot pain. At enlistment, a physical examination revealed normal findings in October 1961. No complaints of “foot trouble” were endorsed in a report of medical history bearing the same date. However, in September 1964 and again in January 1965, the Veteran reported a burning sensation in both feet. No additional treatment or symptoms were indicated. At separation, no physical abnormalities were observed in February 1966. No complaints of “foot trouble” were noted in a corresponding report of medical history.

Post-service treatment records show complaints of a right foot drop. In June 2014, the Veteran was evaluated for complaints of muscle weakness and gait instability. The physician described his muscle weakness as a right foot drop. Straight leg raise testing was positive on the right side. A diagnosis of restless leg syndrome was indicated. During a separate evaluation, dated the same month, electromyography of the lumbar root revealed a possible injury to the right of L5. Treatment notes referenced a causal linkage between the Veteran’s right foot condition and the lumbar surgery performed in 1996. Current symptoms included difficulty with prolonged walking and impaired balance. 

On examination in August 2018, a VA examiner rendered a current diagnosis of right foot drop, to include as secondary to the Veteran’s lumbar spine degenerative disc disease. Current symptoms included general weakness, mild intermittent pain, mild paresthesias and/or dysesthesias, and moderate numbness impacting the right lower extremity. During the clinical evaluation, the Veteran’s muscle strength was described as normal, with no evidence of muscle atrophy or ankylosis. Ankle plantar flexion and dorsiflexion were described as reduced (or a 4 on a 5-point scale). The Veteran’s deep tendon reflexes were hypoactive in the bilateral ankles. Decreased sensation was noted in the right foot, along with a slow gait. Median nerve testing revealed normal findings. However, moderate incomplete paralysis was indicated in the common peroneal nerve. The Veteran denied use of assistive devices. No other pertinent physical findings were indicated. Due to the Veteran’s right foot drop, a functional impact was described as a limited ability to stand for prolonged periods or perform extended walking activities.

Following the clinical evaluation, the examiner opined that it is less likely than not (less than 50 percent probability) that the Veteran’s right foot drop condition was incurred in or otherwise causally related to active service, to include as due to in-service treatment for acute lumbar strains. In support of the stated conclusion, the examiner noted that the Veteran’s service treatment records were silent for complaints of symptoms, treatment, or diagnosis for right foot drop condition.

On review of the record, the Board finds that the Veteran’s right foot drop is not etiologically related to active service, to include as due to treatment for acute lumbar strains or numbness in the bilateral feet. 

In making all determinations, the Board has fully considered all medical evidence and lay assertions of record. Generally, the Veteran is presumed competent to report on the onset of current symptoms, their impact on daily living and employment, and such reporting is deemed credible. However, as to the etiology of a particular claimed disability, the issue of causation of a medical condition is a medical determination outside the realm of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In the instant case, there is no evidence that Veteran possesses the required training to diagnose a right foot drop condition or opine as to its etiology. To the extent his statements may be competent, the Board ultimately assigns greater probative weight to the medical evidence of record, to include opinions rendered by trained medical professionals based on appropriate diagnostic testing and reasonably drawn conclusions with supportive rationale.

Review of the record indicates that the Veteran was treated for complaints of numbness in the bilateral foot on two occasions during active service. No chronic symptomology was observed. At separation, the Veteran denied any experience with foot trouble in February 1966. Post-service, complaints of a right drop were first noted in connection with the Veteran’s lumbar spine condition. In August 2018, the VA examiner acknowledged that his right foot drop impairs his ability to engage in prolonged walking or standing. However, the medical opinion indicated that the evidence failed to show a causal linkage between the Veteran’s right foot condition and active service, to include as due to in-service treatment for acute lumbar strain and/or numbness in the bilateral feet.

Moreover, even if the Board recognizes a causal linkage between the Veteran’s drop foot condition and his current diagnosis of lumbar spine degenerative disc disease, service connection has not been granted for that condition and therefore a secondary basis for service connection has not been shown. While the Board is sympathetic to the Veteran’s subjective belief that his symptoms are causally related to active service, the medical evidence does not support his assertions.

Accordingly, as the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for a right drop foot condition must be denied.

 

B. MULLINS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD N. Whitaker, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.